UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| DEAN DIFILIPPO | ) | |
| | ) | |
| v. | ) | 1:07-cv-280\1:04-cr-159 |
| | ) | *Judge Edgar* |
| UNITED STATES OF AMERICA | ) | |

**M E M O R A N D U M**

Dean Difilippo ("Difilippo") has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Crim. Court File No. 141). The government has filed its response in opposition (Crim. Court File No. 145). After reviewing the record and the applicable law, the Court concludes that the § 2255 motion is without merit and will be **DENIED** for the reasons set forth herein. Thus, there is no need for an evidentiary hearing. Because the Court concludes that an evidentiary hearing is not warranted and Difilippo's § 2255 motion will be denied, his motion requesting counsel will be **DENIED as MOOT** (Crim. Court File No. 147).

**I.     Standard of Review**

A sentence in a criminal case must be vacated if the Court makes a finding "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . . ." 28 U.S.C. § 2255. Under Rule 8 of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to determine, after a review of the answer and the record, whether an evidentiary hearing is required. If no hearing is required, the district judge is to dispose of the

1

case as justice dictates. The Court finds it unnecessary to hold an evidentiary hearing in the present case.

## II. Procedural Background

On October 13, 2004, a federal grand jury returned a four-defendant, seven-count indictment. Difilippo was implicated in six of the seven counts for his involvement in setting two Chattanooga, Tennessee businesses on fire. On May 2, 2005, Difilippo pleaded guilty to two counts of Aiding and Abetting Arson, in violation of Title 18 U.S.C. § 844(i) & 2. DeFilippo, a career offender under United States Sentencing Guidelines ("U.S.S.G.") § 4B1.1, had a total offense level of 29 after receiving a 3 level reduction for acceptance of responsibility, his criminal history category was six, and his guidelines were 151 to 188. After considering the government's motion for a departure based on substantial assistance, Difilippo was sentenced to 130 months on each of Counts Three and Seven, to be served concurrently. In addition, upon release from prison, he shall be on supervised release for a term of three years on each of Counts Three and Seven, all terms run concurrently.

Difilippo, having already gone through the appellate process, brings this § 2255 motion and alleges his sentence is unconstitutional because counsel was ineffective for failing to challenge and prove that Difilippo's four prior felony controlled substance convictions were part of a single common scheme or plan. Specifically, Difilippo asserts that counsel "failed to effectively raise[]this issue in the District Court . . . and [failed to] advance this meritorious issue on the Appellate level." (Crim. Court File No. 141, p. 6).

2

**III.  Facts**

The Presentence Investigation Report ("PSR") described the following offense conduct:

LITTLE GIANT PRODUCE OUTLET

15.  In February 1999, Joseph "Joe" Cooke and Jason Broadnick opened a business called the Little Giant Produce Outlet on Webb Road in Chattanooga, Tennessee.  Cooke provided the start-up money for the business and Broadnick took over day-to-day operation of the business.  They leased the location for six months with an option to extend the lease another six months.  The business operated with only a marginal profit the first six months but Broadnick and Cooke extended the lease in spite of poor profits.  Sometime in November 1999, Cooke came up with a plan to make a profit from the business.  If the business were burned completely down, Cooke would use the insurance money to pay his own construction business to rebuild it.  That way, he would make money from the rebuilding and they would have a much better building suited to operate the produce outlet.  Cooke involved Broadnick and Michael Knaby, another associate, in the planning of the arson.  The alarm system was disengaged by cutting the wires, Cooke showed them how to disable the alarm system, which he had learned from Darrin Webb.

16.  On November 6 and 7, 1999, the three got supplies together to start the fire.  On November 7, 1999, Dean Difilippo joined the group and acted as the fire starter.  A witness in the area of the business noticed the fire soon after it was started and called the fire department.  The fire was extinguished before there was much damage to the building.  Investigators determined that the fire was deliberately set.  As only the total destruction of the business would have suited Cooke's plan, he and Broadnick had to walk away from the business operation without obtaining the insurance money or planning on reopening the business.  The owner of the building sued Cooke and Broadnick for breach of the lease agreement.

17.  The financial loss to the structure caused by the fire has not yet been made available.

CLUB LIQUID

18.  In early 2000, Joe Cooke and business partner Cole Case began searching for a location to open a nightclub.  They decided to buy a building located at 3829 Brained Road owned by Rick Enos.  They negotiated to lease the property from Enos but no deal was made.  Then in February 2000, Edward Sirhan (currently serving a federal prison term for food stamp fraud) purchased the building for $275,000; however, the property transfer was never recorded with the local clerk's office.  The purchase included land, building and building contents.  Joe Cooke and Cole Case then agreed to lease the property from Sirhan for $3,000 per months.  In addition,

3

Case and Cooke had to maintain the fire insurance on the property. Again, Cooke provided the working capital to start the nightclub with Cole Case providing management. Cooke's name was left off the club ownership, substituting Mandi Case, Cole's wife, as the owner of record.

19. In July 2000, Eddie Sirhan was arrested for food stamp fraud and his assets were seized. As the property was never legally transferred, ownership reverted back to Rick Enos. Cooke and Case then entered an agreement with Enos to lease the property with an option to purchase the building. The nightclub, Club Liquid, opened the first week of September 2000. Quickly, Case and Cooke began to realize that the venture was not going to make enough money to meet operating expenses. They started changing the club's hours of operation to cut back on expenses but that was not enough to balance the books for the business. Complaints from neighbors and other issues also interfered with operating the nightclub.

20. Late in September 2000, Cooke decided again to try burning a business owned by him and collect the insurance proceeds. The only way that Cooke would realize a profit from burning Club Liquid was if the claim on the contents of the building were exaggerated. To that end, Cooke borrowed a large truck from Keith Blanks and removed the building's equipment, including kitchen, bar and sound equipment. He and Case then replaced that equipment with substantially inferior equipment. On September 28, 2000, Cole Case called Club Liquid employees and told them not to report to work as the bar would be closed. Case and Cooke then met at the bar that evening to plan the arson. Club manager Matthew Warnock unexpectedly came to the bar and interrupted the meeting. He was then pressured by Cooke and Case to participate in the arson. A rear door from the building was removed from its hinges and they positioned a get-away car nearby.

21. Sometime in the early morning hours of September 29, 2000, Cooke, Warnock and Dean Difilippo arrived by limousine to the parking lot adjacent to Club Liquid. The three then walked to Club Liquid, entered the building, set multiple fires and left. They left the area in the get-away car belonging to Dean Difilippo. Shortly after the fire was started, a witness noticed the fire and alerted authorities. The Chattanooga Fire Department responded and extinguished the blaze. Although there was extensive damage to the building. [sic] Investigators were able to determine that the fire was deliberately set. Cooke then decided not to file an insurance claim in order to avoid the insurance company investigators.

(Presentence Investigation Report "PSR", pp. 5-6).

**IV. Analysis**

4

### A. *Procedural Bar*

In his direct appeal, Difilippo unsuccessfully argued the District Court erred in finding that four prior controlled-substance offenses were unrelated (Crim. Court File No. 137). *United States v. Difilippo*, 218 Fed.Appx. 453, 2007 WL 627852 (6th Cir. 2007), *cert. denied,* 128 S.Ct. 364 (2007). In the instant motion he claims counsel was ineffective for failing to raise, in this Court and in the appellate court, the claim that the four prior controlled-substance offenses were unrelated. Although he did not claim counsel was ineffective in this Court or on appeal, he did raise the underlying claim with which he supports his ineffective assistance claim (the four prior offenses were related) in this Court and on appeal, and both, this Court and the appellate court concluded the claim lacked merit. "A § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances." *Dupont v. United States*, 76 F.3d 108 (6th Cir. 1996). Accordingly, Difilippo has offered no exceptional circumstances, and the Court is unaware of any such circumstances that would justify a relitigation of this claim. Assuming *arguendo* Difilippo could establish cause and highly exceptional circumstances that would permit him to bring this issue before the Court on a § 2255 motion, the Court nevertheless concludes he is not entitled to relief because he cannot demonstrate counsel was ineffective for failing to raise the issue that the four convictions were related.

### B. *Ineffective Assistance of Counsel*

#### 1. *Applicable Law*

The Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established the criteria for determining whether a Sixth Amendment claim of ineffective assistance of counsel is meritorious. The *Strickland* test requires that a defendant demonstrate two essential elements: (1)

counsel's performance was deficient, *i.e.*, counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment, and (2) counsel's deficient performance prejudiced the defense, *i.e.*, deprived the defendant of a fair trial rendering the outcome of the trial unreliable. *Id*. at 687-88.

There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance and that conduct cannot be viewed in hindsight, but must be evaluated for reasonableness within the context of the circumstances at the time of the alleged errors. *Strickland*, 466 U.S. at 689-90. A defendant's challenge to such decisions must overcome a presumption that
the challenged actions might be considered sound trial strategy. *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).

When a defendant challenges his guilty plea, to establish the prejudice prong, he must demonstrate that without counsel's alleged errors, he would not have pled guilty, but would have insisted on standing trial. *Hill v. Lockhart*, 474 U.S. 52, 56, 59 (1985). To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995). "[R]eviewing court[s] must remember that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Wong v. Money*, 142 F.3d 313, 319 (6th Cir. 1998), (quoting *Strickland v. Washington*, 466 U.S. at 690. "An error of counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *Id*. at 691.

6

### 2. *Prejudice Component*

As an initial matter, the Court observes that Difilippo has failed to meet the prejudice prong as to his claim of ineffective assistance of counsel because he has failed to allege, much less demonstrate, a reasonable probability that he would have gone to trial but for counsel's alleged errors. Indeed, the only relief Difilippo requests is that the Court re-sentence him. Thus, Difilippo has failed to demonstrate any resulting prejudice as a result of counsel's alleged ineffective assistance. Moreover, as explained below, Difilippo has failed to demonstrate counsel was ineffective because counsel did in fact argue, albeit unsuccessfully, that the four prior controlled-substance offenses were related.

### 3. *Performance Component*

Difilippo advances a single claim in his § 2255 motion. He asserts his prior drug offenses were part of the same common scheme or plan and therefore, should have been counted as a single offense rather than four separate offenses. Difilippo therefore claims, he was improperly classified as a career offender based on these four prior convictions because counsel failed to make the argument, in this Court and on appeal, that these offenses were related. Difilippo's assertion that counsel failed to argue his prior convictions were related because they were part of the same common scheme or plan is simply incorrect.

First, counsel filed an objection to the PSR and specifically objected to paragraphs 54 through 57 claiming the four convictions were related, in that they were part of a common scheme or plan involving the same individuals; Difilippo was indicted on the same day; entered his plea on the same day; and the offenses were consolidated for a concurrent sentence (Addendum to PSR). In addition, during Difilippo's sentencing hearing counsel made the following argument:

7

MS. LECROY-SCHEMEL: Okay. Very well. And our final objection, Your Honor, has to do with Paragraphs 54 through 57, wherein we contend the government points out that there are four convictions in the presentence report, that they are related and should count as only one, we think, as one conviction. These offenses, it's our contention, were part of a common scheme or plan involving the same individuals, actually, they were resale, I think, cocaine for resale cases in Pennsylvania. It was the same undercover officer each time. They were within a couple of month period. He was indicted all at the same time. There was no intervening arrest. And he pled on the same date, and the offenses were consolidated in the sense that there was a concurrent sentence in those.

THE COURT: Was there a consolidation order?

MS. LECROY-SCHEMEL: No sir, there was not.

....

MS. LECROY-SCHEMEL: . . . And I'm very well aware of what the law is in this jurisdiction regarding that. I know that some of the other circuits, perhaps the Ninth Circuit is a bit more lenient in that matter. I would just ask for the Court to consider that.

. . .

THE COURT: Well, here's the thing about it. I have looked at this actually in some detail. We're talking about Paragraphs 54, 55, 56 and 57. These are all drug offenses. They all were discreet offenses that occurred on different dates, right? Occurred on different dates?

MS. LECROY-SCHEMEL: The offenses, yes sir.

THE COURT: The offenses did. Like, for example, 54, that occurred on July 27, '89. 55 occurred on February 23rd of '91, that's when he was sentenced, occurred on August 11th, ' 89. Next one, February 9th of '90. Next, February 26, '90. You know, all of these cases have separate docket numbers. They were sentenced on the same day, but there was no order consolidating the cases. And as you correctly point out, I believe that the law in the circuit is to the effect there is no consolidation unless they're, in fact, consolidated by some kind of consolidation order. And I would just cite *United States [v]. McAdams*, 25 F.3d 370 [6th Cir. 1994] is one of several cases that so holds. So, and I don't think that they were part of any common scheme or plan. I mean, they were just drug sales that occur on different dates. And they were separate crimes.

So when you look to the definition of related cases in Application Note Three,

8

Section 4A1.2, even though there was not an intervening arrest, as you point out, I still think that the factors that I've mentioned here make it clear that they are not related cases.

(Crim. Court File No. 135, pp. 6-8). Consequently, Difilippo is mistaken in his contention that counsel did not raise the claim that his four prior drug convictions were related cases and were part of a common scheme or plan in this Court. Although counsel vigorously argued that the convictions should be treated as related, the Court concluded that under controlling authority of the court of appeals and Application Note 3 of U.S.S.G. 4A1.2, Difilippo's drug sales on separate dates were "separate crimes" and he was properly classified as a career offender for purposes of calculating his advisory Guidelines range. The Court found that the Guideline range was 151 to 186 months and after considering the motion for a departure based upon Difilippo's substantial assistance, the Court sentenced Difilippo to a sentence of 130 months.

Counsel appealed and continued to press the argument that Difilippo's four prior drug convictions were related and were part of a common scheme or plan. *See United States v. Difilippo*, 2007 WL 627852 (6th Cir. 2007), *cert. denied,* 128 S.Ct. 364 (2007). The Sixth Circuit determined this Court's relatedness finding must be upheld because, in addition to the fact that the state court never consolidated the charges, the offenses occurred on separate occasions; "were not part of a 'single common scheme or plan' because the offenses were not 'jointly planned' or 'at least' so connected 'that the commission of one . . . entail[ed] the commission of the other[s] as well.'" *Id.* at *2, (quoting *United States v. Irons,* 196 F.3d 634, 638 (6th Cir. 1999) (internal quotations marks omitted in original). The Sixth Circuit concluded that "[n]o evidence shows that each sale 'entailed,' or for that matter inevitably led to, the commission of the next sale. And no evidence shows that the three relatively small cocaine transactions were somehow an interconnected prelude

9

to the final, substantially larger $14,500 sale." *United States v. Difilippo*, 2007 WL 627852, at *2(citing *United States v. Carter*, 283 F.3d 755, 757-58 (6th Cir. 2002) (finding no common scheme or plan in three prior state convictions for possession with intent to sell cocaine; all three sales took place within a single month, the defendant made the sales to the same individual, the same judge imposed sentences for the three offenses on the same day and the sentences were set to run concurrently). The Sixth Circuit further noted that "[i]f anything, bringing four separate cases against a single defendant when the cases were indicted 'at the same time' suggests that the State affirmatively chose to separate, not consolidate, the charges." *Id.*

The record clearly demonstrates that Difilippo's claim lacks merit. The PSR, Addendum, the transcript of the sentencing hearing, and the opinion of the court of appeals, all demonstrate that counsel thoroughly and vigorously argued before, both this Court and the Sixth Circuit, that Difilippo's prior drug convictions were related, were part of a common scheme or plan, and that the convictions were related. Counsel argued every relevant fact to support the argument, including the facts identified by Difilippo in his memorandum supporting his § 2255 motion—"[his] prior offenses were part of a single common scheme or plan. . . . Pennsylvania "Effectively Consolidated" [his] prior offenses by indicting [him] on them at the same time, accepting [his] guilty plea to each on the same day and ordering the sentences for all four offenses to run concurrently. . . . [T]he prior offenses . . . stemmed from the same cop, with no intervening arrest." (Crim. Court File No. 141,

Memorandum of Law, p. 5). Difilippo's counsel argued all of these facts in support of the position

10

that the prior convictions were related. *See Difilippo*, 2007 WL at * 2.[1]

Consequently, Difilippo is simply incorrect in his claim because counsel fully advanced these arguments before this Court and the Sixth Circuit and there has been no showing that he received constitutionally deficient representation.[2]

---

[1] Difilippo attaches the criminal complaints and an affidavit of probable cause to his memorandum, none of which offer any new evidence to support his contention that these crimes were a part of a single common scheme or plan (Crim. Court File No. 141, Attachments to Memorandum). At the time Difilippo was sentenced, the Court was aware of all relevant facts. Those facts have not changed.

[2] Although Difilippo does not claim that his sentence should be reduced based on Amendment 709, a post-sentencing amendment to the U.S.S.G. Amendment 709, the Court simply makes the observation that even if he had made such a claim, it does not appear that he would be entitled to relief. Certiorari was denied in Difilippo's case on October 1, 2007. Effective November 1, 2007, Amendment 709 modified and amended § 4A1.2(a)(2) of the Guidelines by removing any reference to related cases and instead, requiring prior sentences to be evaluated as follows:

> (2) If the defendant has multiple prior sentences, determine whether those sentences are counted separately or as a single sentence. Prior sentences are always counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Count any prior sentence covered by (A) or (B) as a single sentence.

U.S.S.G. § 4A1.2(a)(2) (2007). Although it appears that these four convictions would have been counted as one, had Difilippo been sentenced after November 1, 2007, unfortunately for Difilippo, the Sentencing Commission did not make the change in § 4A1.2(a)(2) retroactive as the Commission did not list the amendment among those given retroactive effect. This means that it does not apply to sentences that were determined before the amendment was promulgated. *See United States v. Woods*, 526 F.3d 82 (3rd Cir. 2008) (on direct appeal determined the amended version of § 4A1.2(a)(2) effects a substantive change and did not apply retroactively); *United States v. Marler*, 527 F.3d 874, 878 n. 1 (9th Cir. 2008); *Cantu v. United States*, 2008 WL 2397629, *2 (W.D. Mich. June 11, 2008); *United States v. Atchley*, 2008 WL 4911251 (E.D.Tenn. Nov. 13, 2008) (Amendment 709 cannot be applied retroactively); *United States v. Tatum*, 2008 WL 4865969(E.D. Tenn. Nov. 12, 2008) (Amendment not retroactive).

Accordingly, the Court concludes Difilippo received effective assistance of counsel, and he is not entitled to any relief under § 2255.

## VI. CONCLUSION

Difilippo has failed to establish a plausible claim that would warrant an evidentiary hearing. *See United States v. Tarricone*, 996 F.2d 1414, 1417-18 (2nd Cir. 1993) (noting that to prevail on a motion for hearing, petitioner must establish he has a plausible claim). For the reasons explained above, Difilippo's conviction and sentencing are not in violation of the Constitution or laws of the United States. Accordingly, Difilippo's claims do not entitled him to § 2255 relief and his § 2255 motion will be **DENIED WITH PREJUDICE** (Crim. Court File No. 141).

A separate judgment order will enter.

        */s/ R. Allan Edgar*
        R. ALLAN EDGAR
        UNITED STATES DISTRICT JUDGE